UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY BURDEN *and* LEEVERDIA BURDEN,

        Plaintiffs,

 -v-

WAL-MART STORES EAST, LP,

        Defendant.

No. 17-CV-1289 (KMK)

OPINION & ORDER

Appearances:

Courtney J. Campbell, Esq.
Sobo & Sobo, LLP
Middletown, NY
*Counsel for Plaintiffs*

Patricia A. O'Connor, Esq.
Brody, O'Connor & O'Connor, Esqs.
Northport, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

  Plaintiffs Anthony Burden ("Mr. Burden") and Leeverdia Burden ("Mrs. Burden") (collectively "Plaintiffs") bring this Action against Wal-Mart Stores East, LP ("Defendant") seeking to recover for personal injuries sustained by Mr. Burden at one of Defendant's stores. (*See* Aff. of Patricia A. O'Connor, Esq. in Supp. of Mot. for Summ. J. ("O'Connor Aff.") Ex. 1 ("Compl.") (Dkt. No. 24).) Before the Court is Defendant's Motion for Summary Judgment. (*See* Dkt. No. 23.) For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The following facts are taken from the Defendant's Statement of Material Facts submitted pursuant to Local Civil Rule 56.1, (Def.'s Rule 56.1 Statement ("Def.'s 56.1") (Dkt. No. 25)), Plaintiffs' Response to Defendant's 56.1 Statement (Pls.' Response to Def.'s Rule 56.1 Statement ("Pls.' 56.1 Resp.") (Dkt. No. 31)), and Defendant's Reply to Plaintiffs' Response (Def.'s Reply Statement ("Def.'s 56.1 Reply") (Dkt. No. 33)), and are recounted "in the light most favorable to" Plaintiffs, the non-movants. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (internal quotation marks omitted). The facts as described below are not in dispute, except where indicated.

Plaintiffs allege that "on or about Sunday, June 1, 2014 (*or perhaps Sunday, May 25, 2014)," they went to Wal-Mart in Newburgh, New York ("Newburgh Wal-Mart") to go shopping. (Def.'s 56.1 ¶ 1; Pls.' 56.1 Resp. ¶ 1.)[1] Plaintiffs were in the store "anywhere from 40 minutes to an hour," before Mr. Burden was injured. (O'Connor Aff. Ex. 5 ("L. Burden Dep.") 9; *see also* O'Connor Aff. Ex. 4 ("A. Burden Dep.") 10 ("I figure I was in the store, like, close to, like an hour.").) Mr. Burden testified that they were "going grocery shopping," and he "was going to shop for the bathroom body wash," (A. Burden Dep. 11), but Mrs. Burden testified that they were just "[s]ight-seeing," and that they "went to the back where the barbecue grills

---

[1] Mr. Burden and Mrs. Burden do not agree on what date the incident occurred in the Newburgh Wal-Mart. Mr. Burden testified that the incident took place on "June 2nd . . . in the afternoon," (O'Connor Aff. Ex. 4 ("A. Burden Dep.") 9), while Mrs. Burden testified that she does not "know the exact date[,] [b]ut [they] . . . went [to the Newburgh Wal-Mart] because [they] wanted a grill for Memorial Day. So it was a few days before Memorial Day," (O'Connor Aff. Ex. 5 ("L. Burden Dep.") 8). For purposes of this Motion, the exact date is not relevant, but the Court notes that, as will be discussed below, this is not the only inconsistency between Mr. and Mrs. Burden's versions of the events.

2

[were]," and ultimately purchased a barbecue, (L. Burden Dep. 10–11). Plaintiffs both agree that Mr. Burden wanted body wash, and that both Plaintiffs went to the body wash aisle. (A. Burden Dep. 11; L. Burden Dep. 12.)

Mr. Burden testified that "[a]fter entering the aisle . . . [he] tried to grab the shampoo bottle off the shelf." (A. Burden Dep. 15.) The bottle that he attempted to select was "[a]bove [his] head," and he could not "reach th[e] item by extending [his] arm above [his] head." (*Id.* at 16.) However, he was able to touch it with "the ends of [his] fingertips," and in so doing he "tried to pull it off the shelf, but [he] couldn't." (*Id.* at 17.) When Mr. Burden attempted to pull the bottle from the shelf, the bottle "that [he] w[as] touching" fell from the shelf. (*Id.*) Mr. Burden testified that nothing else fell from the shelf, "just the shampoo bottle . . . that [he] w[as] touching." (*Id.* at 18.) Mr. Burden confirmed that the bottle that fell was "standing upright" on the shelf before it fell off. (*Id.*) When the bottle fell, it hit Mr. Burden's "middle toe" on his "right foot" before ending up on the floor in front of him. (*Id.* at 18–19.) Mr. Burden testified that he and Mrs. Burden were the only individuals in the aisle at the time of the incident, and that they stayed in the aisle for "[l]ike ten to 15 minutes at the most" after the bottle struck his toe. (*Id.* at 20.) After waiting in the aisle, Mr. Burden testified that he and Mrs. Burden went home in a taxi without purchasing any items. (*Id.* at 21–22.) Mr. Burden did not see any Wal-Mart employee stocking the shelves in the aisle prior to the incident, (*id.* at 45), nor were there "any bottles stocked on top of th[e] bottle" that he attempted to take from the shelf, (*id.* at 47).

Mrs. Burden's version of the events is different from her husband's. Mrs. Burden allegedly entered the body wash aisle, where there were two customers shopping. (*See* L.

Burden Dep. 12–13.)[2] Mrs. Burden "s[aw] the items come off the shelf, c[o]me down and hit [Mr. Burden] in the foot." (*Id.* at 15.) According to Mrs. Burden, the body wash that Mr. Burden was reaching for fell, and then other items fell from "another shelf . . . the shelf on top." (*Id.* at 15–16.) Specifically, Mrs. Burden testified that Mr. Burden was attempting to select an item from the sixth shelf, and then other items fell "[o]ff the top shelf," which was the seventh shelf directly above the shelf from which Mr. Burden was in contact. (*Id.* at 18–19; *see also id.* at 19 ("Q. So the witness is indicating when [Mr. Burden] reached into what we have identified as the sixth shelf, an item came off the seventh shelf, correct? A. Correct.").) Mrs. Burden did not remember what fell, but could only remember that two items fell from the seventh shelf, and that she did not remember what caused the items to fall. (*See id.* at 20.) She did not observe the items on the shelf before they fell to the ground. (*See id.*) Mrs. Burden did not see any items stacked horizontally prior to them falling off of the shelf, (*see id.* at 22), but testified that "maybe four or five" bottles were stacked in a manner that one bottle was laid out horizontally on top of a bottle stacked vertically, (*id.*). According to Mrs. Burden, they "remained in the aisle about five minutes, at the most," after the items fell on Mr. Burden's toe. (*Id.* at 29.) Mrs. Burden did not observe any Wal-Mart employees stocking the area where the incident occurred, (*see id.* at 30), although she has seen Wal-Mart employees stocking the area in the past, (*see id.*). However, she has "never witnessed" any Wal-Mart employees "stocking the shelf by laying products in a horizontal methodology or on their sides on the top shelf," (*id.*), nor did she know

---

[2] "Q. When you entered that aisle that day, was there anybody else in the aisle? A. I am not trying to be rude, but it was a—I don't know if she—it was another lady and her son, put it like that. Q. Were they customers? A. I believe so, yes. She had a little boy with her. I want to say Puerto Rican. Q. Spanish? A. Yes. Q. Do you feel better about that[?] A. I don't want to be mean. Q. That's not mean. Everyone is too sensitive. Other than this Spanish woman and her son, was there anyone else in the aisle? A. No, there wasn't." (L. Burden Dep. 12–13.)

4

who placed the items on the shelf horizontally or how long the items were placed that way, (*see id.* at 30–31).[3] Mr. and Mrs. Burden left the store without advising any Wal-Mart employees of the incident. (A. Burden Dep. 22; L. Burden Dep. 32, 35.)

Ciara Marshall ("Marshall") testified that while she was manager of the beauty and cosmetics section of the Newburgh Wal-Mart in 2012 and 2013, there was only one time where an employee had stacked items "in a horizontal [manner] instead of a vertical [manner]." (O'Connor Aff. Ex. 8 ("Marshall Dep.") 26–27.)[4] By contrast, she encountered *customers* improperly stacking body wash "maybe two or three times a week." (*Id.* at 41.) Marshall also noted that she "train[ed] employees on stacking and shelving procedures," and specifically that it "was unacceptable" to stack items on top of one another. (*Id.* at 33–34.) Moreover, Huyler Vanwagenen ("Vanwagenen"), the asset protection manager at the Newburgh Wal-Mart, testified that he has never seen items stacked horizontally, and that Wal-Mart employees are not allowed to stack items in that manner. (O'Connor Aff. Ex. 7 ("Vanwagenen Dep.") 42.)

B. Procedural History

Plaintiffs commenced the instant action in the Supreme Court of the State of New York, County of Orange, on April 28, 2016. (*See* Notice of Removal (Dkt. No. 1).) Defendant removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and

---

[3] Mrs. Burden attributes the differences in her and her husband's versions of events to Mr. Burden's memory, which is "about . . . gone . . . because of the numerous medications he takes." (L. Burden Dep. 23.) Those medications are Advil and blood pressure medicine, (*id.* at 23–24), and Mrs. Burden said it was only her "opinion" that the medications impacted his memory, as she "d[id] [not] know the side effects of them," (*id.* at 27).

[4] Marshall notes that on this one occasion where the items were improperly stacked, she "held the associate accountable." (Marshall Dep. 27.) According to Marshall, this involved a "verbal coaching," which was put in the system to maintain a record of the employee's disciplinary history and shared with Marshall's immediate supervisor. (*Id.* at 26–27.) No further corrective action was needed after the verbal coaching. (*Id.* at 27.)

5

1441. (Notice of Removal 3). On December 7, 2017, Plaintiffs informed the Court that Mr. Burden had passed away. (Dkt. No. 19.) Nevertheless, given Mrs. Burden's status as a Plaintiff in this case, the Court held a pre-motion conference, (*see* Dkt. (entry for Dec. 14, 2017)), and issued a briefing schedule, (Dkt. No. 22).

Pursuant to the scheduling order, Defendant filed the instant Summary Judgment Motion, (Dkt. No. 23), along with a supporting Memorandum of Law, Rule 56.1 Statement, and supporting Affidavit, on February 23, 2018. (Def.'s Mem. of Law in Supp. of Mot. For Summ. J. ("Def.'s Mem.") (Dkt. No. 26); O'Connor Aff.; Def.'s 56.1.) On April 16, Plaintiffs filed a Memorandum of Law in Opposition, along with a Rule 56.1 Response Statement. (Pls.' Mem. of Law. Opp'n to Mot. for Summ. J. ("Pls.' Opp'n") (Dkt. No. 31); Pls.' 56.1 Resp.) On April 25, 2018, Defendant filed a Reply Memorandum of Law and Reply to Plaintiffs' Rule 56.1 Response Statement. (Def.'s Reply Mem. of Law. in Further Supp. of Mot. for Summ. J. ("Def.'s Reply Mem.") (Dkt. No. 32); Def.'s Reply 56.1.)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014)

(same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law."  *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any

factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

B. Analysis

"To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of N.Y.*, 489 N.E.2d 1294, 1294 (N.Y. 1985)). In a premises liability case, a plaintiff must first show "the existence of a dangerous or defective condition" that caused the accident. *Vasquez v. United States*, No. 14-CV-1510, 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016) (quoting *Winder v. Exec. Cleaning Servs., LLC*, 936 N.Y.S.2d 687, 687 (App. Div. 2012)). Next, "the plaintiff must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it." *Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-2886, 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017) (alterations and internal quotation marks omitted). Plaintiffs' sole claim of liability is that Defendant created the defective condition. (*See* Pls.' Opp'n 2 ("The circumstantial evidence . . . constitute facts and conditions from which . . . [D]efendant's negligence in . . .creating a hazardous condition may be inferred."); *see also id.* 4 ("If there are facts indicating that [D]efendant created the condition, it is irrelevant for establishing liability

whether . . . [D]efendant had actual or constructive notice of the condition.").) Accordingly, the Court only addresses the issue of whether Defendant created the defective condition.[5]

"To establish that a defendant created a dangerous condition or defect, a plaintiff must point to some affirmative act on the part of the defendant." *Decker*, 2017 WL 568761, at *5 (internal quotation marks omitted). "Circumstantial evidence on this point may be sufficient to defeat a motion for summary judgment, if it supports the inference that the defendant created the danger through its own affirmative acts." *Vasquez*, 2016 WL 315879, at *7; *see also Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014) (same). However, "[a] plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." *Cousin v. White Castle Sys., Inc.,* No. 06-CV-6335, 2009 WL 1955555, at *6 (E.D.N.Y. July 6, 2009); *see also Feder,* 15 F. Supp. 3d at 256 ("Though a plaintiff cannot avoid summary judgment on this issue through mere speculation and conjecture, circumstantial evidence may be sufficient if it supports an inference of causation or negligence.").

As an initial matter, Plaintiffs' testimony is inconsistent regarding whether there was a dangerous or defective condition that actually caused Mr. Burden's injury. Mr. Burden testified that he was attempting to grab a bottle of shampoo that was placed on a shelf "[a]bove [his] head," and out of his reach. (A. Burden Dep. 16.) Mr. Burden "tried to pull it off the shelf, but

---

[5] Although Plaintiffs' Complaint made allegations sounding in actual or constructive notice, (Compl. ¶ 34), Plaintiffs now argue only that Defendant created the condition, (Pls.' Opp'n 2, 4). Thus, to the extent Plaintiffs had any arguments relating to actual or constructive notice, those arguments have been waived. *See Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) ("[The plaintiff] failed to . . . raise this argument in his opposition to summary judgment. Thus, this argument has been waived."); *Simon v. City of New York*, No. 14-CV-8391, 2015 WL 4092389, at *2 (S.D.N.Y. July 6, 2015) (collecting cases holding that a plaintiff abandons claims when it fails to address a defendant's argument on a motion, regardless of its merit).

9

[he] couldn't." (*Id.* at 17.) The bottle—"[t]he item that [he] w[as] touching"—then fell and hit his toe. (*Id.*) Nothing else fell, "just the shampoo bottle," specifically "the one that [Mr. Burden] w[as] touching." (*Id.* at 18.) Mr. Burden further testified that the bottle that fell on his toe was standing "[u]pright." (*Id.*) Mr. Burden also testified that there were no "bottles stacked on top of th[e] bottle" that he attempted to grab and that fell on his toe. (*Id.* at 47.)

However, Mrs. Burden, the only other witness to the incident according to Mr. Burden, (*id.* at 20), said that "[t]wo items" fell from the shelf above the shelf Mr. Burden was reaching for, (L. Burden Dep. 19–20). Mrs. Burden claimed there were "four or five" items stacked horizontally, but she never actually saw "any . . . items stacked [horizontally] prior to them falling off the shelf," (*id.* at 22), nor did she "observe any Wal-Mart employees stocking th[e] area" where the incident occurred, (*id.* at 30). In fact, Mrs. Burden has "never witnessed" Wal-Mart employees "stocking the shelf by laying products in a horizontal methodology or on their sides on the top shelf." (*Id.*)

Irrespective of whether there even was a hazardous condition, given Mr. Burden's own testimony about the events in question, (A. Burden Dep. 17–18, 47), there is simply *no* evidence in the record that supports an inference that Defendant or its agents committed an act that created such a condition. Neither Mr. Burden nor Mrs. Burden reported seeing any employees carrying or handling bottles of the kind that fell on Mr. Burden, nor did they testify that they *ever* observed any employees stack bottles horizontally on top of one another. There is no evidence of employees in the area either before or after the incident occurred; indeed, according to Mr. Burden, he and Mrs. Burden were the only individuals in the aisle at the time. (*See id.* 20.) Even crediting Mrs. Burden's account, the only individuals there were two Wal-Mart customers, not employees. (L. Burden Dep. 12–14.) Moreover, Mrs. Burden confirmed that she never saw

10

"any . . . items stacked [horizontally] prior to them falling off the shelf," (*id.* at 22), nor did she "observe any Wal-Mart employees stocking th[e] area" where the incident occurred, (*id.* at 30). "Absent such evidence, [Plaintiffs] cannot prove that Defendant created the spill, and summary judgment on that issue is warranted." *Strass v. Costco Wholesale Corp.*, No. 14-CV-6924, 2016 WL 3448578, at *4 (E.D.N.Y. June 17, 2016) (granting summary judgment where, *inter alia*, plaintiffs failed to identify any evidence that defendant "created the spill"); *see also Painchault v. Target Corp.*, No. 09-CV-1831, 2011 WL 4344150, at *3 (E.D.N.Y. Sept. 14, 2011) (granting summary judgment where "[t]he small puddle of liquid, apparently water, could have been caused by a customer, and nothing indicates that it was caused by a[n] . . . employee" of the defendant, and "[a]ccording to their testimony, neither [the plaintiff] nor [the store manager] knew the source of the spill"); *Cousin*, 2009 WL 1955555, at *7 (granting summary judgment where no evidence supported an inference that defendant created the spill and noting that "New York courts routinely grant summary judgment in favor of defendants in such circumstances"); *cf. Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330 (E.D.N.Y. 1998) ("The intervening act of spilling [the substance] creates the condition and it is not attributable to the defendant absent either spil[l]age by the defendants' employees or conduct on the defendants' part which demonstrably increases the risk of creating the condition.").

The facts here make this case distinguishable from those cases where a business was found to have created the hazard based on circumstantial evidence. For example, in *Cruz v. Target Corp.*, No. 13-CV-4662, 2014 WL 7177908, at *4 (S.D.N.Y. Dec. 17, 2014), the court found that a jury could infer that the defendant store created the condition based on the plaintiff having "consistently testified that a Target employee exclaimed 'it's mine,' which could reasonably be understood as an admission that he had caused the spill himself." *Id.*

Additionally, the court noted that there was evidence of a stepstool at the scene, which "ma[de] it somewhat more likely than otherwise that a Target employee had recently been working next to the location of the spill, which in turn makes it more likely than otherwise that an employee rather than a customer caused the spill." *Id*; *see also Feder*, 15 F. Supp. 3d at 256–57 (denying summary judgment where the employee admitted to using similar plastic ties to those which the plaintiff slipped on, and that, given "[t]he size and nature of the item . . . suggest that . . . an employee had cut it in the process of stocking shelves . . . and it is unlikely that a customer would carry such an object around"); *Carlucci v. Wal-Mart Stores E., LP*, No. 12-CV-1432, 2014 WL 12543820, at *3 (S.D.N.Y. Mar. 10, 2014) (denying summary judgment where there was evidence that would permit a fact-finder to infer that an employee failed to properly utilize the defendant's shelving systems to secure the items on the shelves); *Olsen v. K Mart Corp.*, No. 04-CV-3648, 2005 WL 2989546, at *6–8 (E.D.N.Y. Nov. 8, 2005) (denying summary judgment where testimony confirmed that an employee was stocking the aisle at issue that morning and thus finding it possible to infer that an employee "overlooked" the "sixteen pound box" that was the cause of the fall while stocking the shelves). Here, by contrast, both Plaintiffs have testified that there were no employees in the area before, during, or after the incident, and that they did not witness any employees stocking the shelves beforehand. (*See* A. Burden Dep. 20, 45, 47; L. Burden Dep. 13–14, 30.) Indeed, neither Mr. nor Mrs. Burden ever saw a Wal-Mart employee stack bottles horizontally on top of one another. (*See* A. Burden Dep. 45, 47; L. Burden Dep. 30.) Moreover, Mr. Burden testified that the bottle that he attempted to grab was the one that hit him, (*see* A. Burden Dep. 17–18), and that it was not any bottle laying horizontally on top of that bottle because, according to his testimony, there were not "any bottles stocked on top of th[e] bottle" that he attempted to take from the shelf, (*id.* at 47). Mrs. Burden testified that two bottles

fell from the shelf *above* where Mr. Burden had touched a bottle, (*see* L. Burden Dep. 20), that she never actually saw "any . . . items stacked [horizontally] prior to them falling off the shelf," (*id.* at 22), and that she has in fact "never witnessed" any Wal-Mart employees "stocking the shelf by laying products in a horizontal methodology or on their sides," (*id.* at 30).[6]

"Plaintiff[s'] burden at this stage of the proceedings is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that Defendant created the hazardous condition." *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 319 (E.D.N.Y. 2014). This is especially true given Mr. Burden's testimony that it was a *vertically* stacked bottle that *he* attempted to grab that created his injury. (A. Burden Dep. 17–18.) Ultimately, the mere presence of four or five bottles stacked improperly, bottles which both Mr. and Mrs. Burden testified to not observing or knowing how they got there, (*see id.*; L. Burden Dep. 22), in the absence of any other tangible evidence to support Plaintiffs' theory, is insufficient to permit a reasonable jury to find that Defendant's employees *created* the hazard. *See Janetos v. Home Depot U.S.A., Inc.*, No. 09-CV-1025, 2012 WL 4049839, at *10 (E.D.N.Y. Sept. 13, 2012) (finding that the plaintiff had not established that defendant had created the dangerous condition of doors stacked improperly, because although the plaintiff's "narrative provides a plausible explanation for what may have occurred, it is not conclusive for summary judgment purposes"); *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 404 (E.D.N.Y. 2010) (granting summary judgment and rejecting the plaintiff's argument "that the puddle of

---

[6] Moreover, as noted Marshall testified that she had encountered an employee stacking items "in a horizontal [manner] instead of a vertical [manner]" only once, (Marshall Dep. 26), but that she had encountered *customers* improperly stacking body wash "maybe two or three times a week," (*id.* at 41). Marshall noted that she "train[ed] employees on stacking and shelving procedures," and specifically that it "was unacceptable" to stack items on top of one another. (*Id.* at 33–34.) Vanwagenen testified that he had never seen items stacked horizontally, nor are Wal-Mart employees allowed to stack items in that manner. (Vanwagenen Dep. 42.)

water could have resulted from one of [the defendant's] employees' affirmative, although inadvertent, acts, such as accidentally spilling water from a cleaning bucket," where "[t]he evidence . . . does not support a reasonable inference that a [defendant's] employee created the puddle, even if [it] does not foreclose such a possibility"); *Buskey v. Boston Mkt. Corp.*, No. 04–CV–2193, 2006 WL 2527826, at *5 (E.D.N.Y. Aug. 14, 2006) (finding no triable issue of material fact where the plaintiff slipped on water in a restroom and there was a bucket behind a toilet, but there was no indication that any nearby employee had been fixing a leaking pipe); *Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 221 (E.D.N.Y. 1998) ("There is no proof, only mere speculation, as to how the substance got on the floor, or whether the defendant or its employees created the condition, and absent evidentiary proof in admissible form to prove otherwise, the plaintiff has not raised a triable issue of fact."). Indeed, even if Plaintiffs had both seen the improperly stocked bottles, which they did not, there is no evidence in the record revealing how the bottles ended up that way or that this was a direct consequence of an action of Defendant—in fact, there is no testimony of *any* Wal-Mart employee being in the vicinity of the aisle in question at *any* time before the incident. *See Buskey*, 2006 WL 2527826, at *5 ("Even if [the] [p]laintiff were lying in water, there is no evidence in the record revealing how the water got on the floor or that the water condition was a direct consequence of the defendant's passive activity of placing a bucket in the restroom . . . [and] there is no indication that any of [the] [d]efendant's employees were in the vicinity of [the] [p]laintiff's accident." (citation and internal quotation marks omitted)).

Moreover, although Plaintiffs have waived this argument in their Opposition, there is no evidence that Defendant was on constructive notice of the allegedly defective bottle stacking. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a

sufficient length of time prior to the accident to permit [the] defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat'l History*, 492 N.E.2d 774, 775 (N.Y. 1986); *see also Decker*, 2017 WL 568761, at *4 (same). Alternatively, "[a] plaintiff can establish constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed." *Mazerbo v. Murphy*, 860 N.Y.S.2d 289, 291 (App. Div. 2008) (citation and internal quotation marks omitted). Here, Plaintiffs have neither argued nor presented evidence that the bottle stacking was a recurring danger in the store. And, as the Court has previously discussed, neither Mr. nor Mrs. Burden ever saw a Wal-Mart employee stack bottles horizontally on top of one another, nor did they see any Wal-Mart employees in the area at all. (*See* A. Burden Dep. 45, 47; L. Burden Dep. 30.) Indeed, Mrs. Burden noted that she never actually saw "any . . . items stacked [horizontally] prior to them falling off the shelf," (*id.* at 22), nor did she "observe any Wal-Mart employees stocking th[e] area" where the incident occurred, (*id.* at 30). There is simply no testimony of *any* Wal-Mart employee being in the vicinity of the aisle in question at *any* time before the incident. Thus, Plaintiffs have failed to present any evidence other than speculation regarding whether the defect was visible and apparent and regarding the length of time the defect was occurring.

Accordingly, the Court grants Defendant's Summary Judgment Motion.

15

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 23), enter judgment for Defendant, and close this case.

SO ORDERED.

DATED: September 28, 2018
             White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE